THE ATLANTIC DOCK COMPANY, Respondent, *v.* WILLIAM H. LIBBY et al., Appellants.

A factory and machinery for distilling paraffine oil is not a " distillery," within the meaning of a covenant against the erection or maintenance of a distillery. CHURCH, Ch. J.

Evidence of an insurance agent, as to the reasons why the insurance company with which he was connected had refused to insure certain property, is inadmissible to show the dangerous character of the business carried on upon the property, especially where such agent admits that he has himself no personal knowledge of such business.

An action was commenced by a grantor to restrain the carrying on by the grantee of a certain business in violation of the covenants in the deed, and for $1,000 damages. The value of the property affected by this action was $50,000.—*Held*, that an extra allowance of costs under section 309 of the Code could not be computed upon the value of the premises.

(Argued April 21st; decided May 30th, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court, in the second judicial district, affirming a judgment entered upon the report of a referee in favor of the plaintiff, and from the order granting the plaintiff an extra allowance of costs of $500.

The defendants occupy several lots of ground as owners and lessess, in the city of Brooklyn, conveyed by the plaintiff to one Worcester, from whom title is derived. The deed to Worcester contains the following clause:

" And the party of the second part for himself, his heirs and assigns, doth hereby covenant with the said Atlantic Dock Co., and their successors, that neither the said party of the second part, or his heirs or assigns, shall or will at any time hereafter erect upon any part of said lots   *   *   * any manufactory of gunpowder, glue, varnish, vitriol, turpentine, or any brewery, distillery, slaughter-house, or other noxious or dangerous trade or business." The grantee did not sign the deed, but accepted and recorded it. Upon the premises granted the defendants manufactured paraffine or lubricating oil, which is obtained from a residuum of petroleum (petroleum tar), by distillation, a process of evaporation and condensation, the crude material being vaporized at a high temperature and passed through a worm to a condenser. The plaintiffs claim that such use is in violation of the above restriction. The issues were referred to a referee. He held, that a " distillery " had been erected, and found as particularly stated in the opinion; and adjudged that the defendants be perpetually enjoined and restrained from carrying on the business carried on by them on said premises. The defendants excepted to the introduction of certain testimony of an insurance agent bearing upon

the question of the "dangerous" character of the business, which is sufficiently referred to in the opinion of the court, and also to an extra allowance of costs.

*Joshua M. Van Cott*, for the appellants.

*Samuel Hand & N. Burchard*, for the respondent.   On the question of the findings of fact, *Thompson* v. *Kessel* (30 N. Y., 383); *Loeschick* v. *Baldwin* (35 N. Y., 326); *Reformed Dutch Church* v. *Brown* (24 How., 74).   On the question of the deed, which was not signed by the grantee, 2 Co. Lit. p. 187; *Torry* v. *Bank of Orleans* (9 Paige, 659); *Belmont* v. *Coman* (22 N. Y., 438); *Spaulding* v. *Hallenbeck* (35 N. Y., 207); *Burnett* v. *Lynch* (5 Barn. & Cress., 596).   Upon the construction of the restrictive clause, *Parkhurst* v. *Alexander* (1 John., Ch., 510); *Dick* v. *Balch* (8 Pet., 30); *Tulk* v. *Moxhay* (11 Beav.,   ); *Tallmage* v. *E. R. Bank* (26 N. Y., 105); *Bishop* v. *Elliot* (11 Exch., 113); *Clark* v. *Martin* (1 Amer. Law Reg., 479); 29 Beav., 4.   Even if not strictly a distillery, it comes within the prohibition, according to the maxim *noscitur a sociis*. (*Cullen* v. *Buller*, 5 Maule. & Sel., 465; *Aiken* v. *Wasson*, 24 N. Y., 484; Broome's Leg. Max., 450; *Atlantic Dock Co.* v. *Leavitt*, 50 Barb., 135.)   The business was a nuisance at common-law.   (*Catlin* v. *Valentine*, 9 Paige, 571; *Whitney* v. *Bartholomew*, 21 Conn., 213.)   The covenant must be sustained, even if the plaintiff sustain no pecuniary loss from its breach. (*Barron* v. *Richards*, 8 Paige, 351; *Whitney* v. *Union R. R. Co.*, 23 Bost. L. R., 303; *Hoyt* v. *Carter*, 19 Barb., 212; *Kemp* v. *Joher*, 1 Sim. R., 517; *Burt* v. *Haslet*, 18 Com. Bench., 162.)   On the question of the extra allowance, *People* v. *A. & V. R. R. Co.* (16 Abb., 465); *Coleman* v. *Chauncey* (7 Rob., 579).

CHURCH, Ch. J.   The covenant was not to erect or permit upon the premises in question "any manufactory of gunpow-

der, glue, varnish, vitriol, turpentine, or any brewery, distillery, slaughter-house, or other noxious or dangerous trade or business."

I am inclined to think that the building in which the defendants carry on the business of manufacturing paraffine oil is not a distillery, within the strict meaning of that word, as used in the covenant. Words are to be given the signification which the parties intended, and we are to presume that signification was intended which is generally understood and in general use. The definition of a distillery within this rule is a place or building where alcoholic liquors are distilled or manufactured, and not every building where the process of distillation is used. That process might be employed in a building or business not within the intended restrictions of the covenant, and not within the objects intended to be secured by the prohibition. But it is not very important whether the manufactory is technically a distillery or not, within the meaning of the covenant. If the business is dangerous or noxious, it is equally within the prohibition of the covenant as if it came within the accepted definition of a distillery. The general words *noxious* and *dangerous* are to be construed in the light of the previous specifications upon the maxim *noscitur a sociis*. (*Aiken* v. *Wasson*, 24 N. Y., 484.) Business or trade of the character of those specifically described were intended to be protected.

The referee has found that the defendants have erected a distillery for the manufacture of paraffine oil, and carry on that business; that the business is so carried on as to cause an offensive and unwholesome odor to arise from said premises; that a smoke is produced, by which a soot is scattered about the adjoining premises, blackening whatever articles it falls upon; that furnaces are kept at an unusual and extreme heat; and that occasionally a "lurid flame" arises, which, with the fires, give to all persons in the vicinity reasonable apprehension of danger from fire both to persons and property.

We cannot review the facts except for the purpose of determining whether there is any proof to sustain the findings of the referee. There is evidence to warrant the finding that the business carried on is noxious. In addition to the want of proper drainage and the stagnant pools of water allowed to remain on the premises, and the smoke and soot, which is sometimes offensive, there is evidence tending to show that the treatment of the oil for the purpose of purification, after it has passed through the process of distillation, by mixing with it sulphuric acid, creates a pungent, offensive and unwholesome odor, which seriously affects those residing in the immediate vicinity. It is claimed that this odor is not unhealthy, and there is conflicting evidence upon the point, but all the witnesses agree that it is very disagreeable, and several aver that it is extremely offensive and nauseous.

It is claimed by the learned counsel for the appellant, that the referee has not found facts sufficient to warrant the conclusion of the law that this manufactory or business is " dangerous," within the meaning of the covenant. The finding of fact that the furnaces and stills are kept at an *unusual and extreme heat*, which, with the " lurid flame," give to all persons in the neighborhood *reasonable apprehension of danger*, is fully supported by the evidence, and, although not as direct as might be desirable, is sufficient to authorize the conclusion that the business is dangerous, within the meaning of the covenant, and quite as much so as an ordinary distillery, which the parties evidently regarded as dangerous within the principle referred to. But the direct finding that the business is dangerous, is a finding of fact, although contained in the conclusions of law. (2 Keyes, 228.)

The referee committed an error in allowing the witness, Harris, to state the reason why the insurance company with which he was connected would not insure this building, after he had stated that he knew nothing of the building or the business, or the process of manufacturing the oil. Such evidence was the mere opinion of one who had no knowledge upon the subject, and was inadmissible, although it related

only to one branch of the case, that of the dangerous character of the business.

The object of the plaintiff in exacting the covenant is manifest. They were the owners of a tract of land of which these lots are a part, and their design was to protect themselves from loss by the depreciation of their other property, by reason of proximity to the prohibited establishments, which are regarded as objectionable, and to enhance their value by exempting them from contact with such establishments. The covenant was lawful ; the parties had a right to make it, and we have no power to change or alter it. It is difficult to read this covenant and the evidence in this case, without being impressed with the conviction that the business of the defendants, as carried on by them, is within the fair meaning and intent of the restrictive words as contemplated by the parties. (*Barrow* v. *Richards*, 8 Paige, 351.) The defendants took the premises *cum onere*, and if loss results to them by reason of the nature of their business, it is legally attributable to the violation of their assumed obligation.

For the error in receiving incompetent evidence, we see no way properly to dispose of the case, with due regard to the interests of both parties, except to grant a new trial.

Judgment reversed and new trial ordered, costs to abide the event.

The order allowing the plaintiff $500, as an extra allowance of costs, must be reversed. The referee certified that the value of the real estate of the defendants, with their factory machinery, affected by this action, is upward of $50,000.

The 309th section of the Code authorizes an allowance " not exceeding five per cent upon the amount of the recovery or claim, or subject-matter involved." The action was brought to restrain the carrying on of certain business, and for one thousand dollars damages. No damages were recovered, but the action was sustained for the injunction. The question, therefore, is, whether the *subject-matter involved* in the action was the value of the premises and machinery. I think not. There is nothing to show that they are not as

valuable for other purposes as for the business which has been carried on, and the title of the defendants is not affected or impaired by the judgment.

All concurring except PECKHAM, J., who was for affirmance, and FOLGER, J., for affirmance with modifications. Judgment reversed and new trial granted.